1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   GERAWAN FARMING, INC.,                    CASE NO. CV F 10-2011 LJO JLT

11            Plaintiff,                        **SUMMARY JUDGMENT DECISION ON**
                                                **LIMITATIONS DEFENSE**
12        vs.                                   (Docs. 91, 94.)

13   TOWNSEND AND TOWNSEND
14   AND CREW LLP, et al.,

15            Defendants.

16   _____/

17                              **INTRODUCTION**

18        Defendant attorney and law firms seek summary judgment that plaintiff Gerawan Farming, Inc.'s

19   ("Gerawan's") legal malpractice claims arising from Gerawan's diminished trademark are barred by the

20   one-year limitations of California Code of Civil Procedure section 340.6 ("section 340.6"). Gerawan

21   responds that it timely pursued it claims in that it did not suffer actual injury until a legal challenge to

22   its trademark. This Court considered defendants' summary judgment motions on the record[1] without

23   a hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DENIES

24   _____

25        [1]      This Court carefully reviewed and considered the record, including all evidence, arguments, points and
     authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed
26   by the parties. Except as otherwise noted, omission of reference to evidence, an argument, document, objection or paper is
     not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper. This
27   Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary
     judgment. This Court does not rule on evidentiary matters in a summary judgment context, unless otherwise noted. This
28   decision is based in no part on the declarations of David Franklyn or Kurt Melchior or their exhibits, upon which this Court
     did not rely.

                                            1

1  defendants summary judgment on the limitations defense.

2  **BACKGROUND**

3  **Summary**

4  Gerawan, a family-owned California corporation, is the United States' largest grower of peaches,

5  plums and nectarines and among the leaders in table grapes.  Gerawan has marketed its produce under

6  its Prima brand, and its standard character and stylized Prima trademarks are registered with the U.S.

7  Patent and Trademark Office ("USPTO").  During the 1990s, defendants attorney Rodney Worrel ("Mr.

8  Worrel") and his law firm Worrel & Worrel (collectively "Worrel") prosecuted for Gerawan three plum

9  tree patents and a peach tree patent which include Prima in the patent name.  In 2001, defendant law firm

10  Townsend and Townsend and Crew ("Townsend") prosecuted for Gerawan a nectarine tree patent which

11  includes Prima in the patent name.  Gerawan pursues against Worrel and Townsend (collectively

12  "defendants") legal malpractice claims that inclusion of Prima in the patents diminishes its trademark.

13  Defendants contend that section 340.6 bars Gerawan's claims in that Gerawan knew of alleged

14  malpractice and had suffered actual injury more than a year in advance of effective filing of this action.

15  Gerawan argues the section 340.6 limitations period was tolled until the Prima trademarks were

16  challenged in litigation.

17  **Origination Of Prima Trademark**

18  In the 1970s, Gerawan adopted the Prima brand for fresh produce it grows and distributes.  In

19  1987, Gerawan registered with the USPTO its standard character Prima trademark which Gerawan

20  characterizes as "associated with high quality produce." In March 2009, Gerawan registered with the

21  USPTO its stylized Prima trademark to cover its use on fresh fruits.[2]  The Prima trademark primarily

22  covers peaches, plums, nectarines and table grapes after Gerawan deleted vegetables and certain fruits

23  from the registration. Gerawan notes its extensive advertising and sales of fresh produce throughout the

24  United States and goodwill associated with the Prima trademark.

25  **Worrel's Representation Of Gerawan**

26  During 1984 through October 28,1997, Worrel represented Gerawan regarding the Prima

27

28  [2]    This Court will refer to the standard character and stylized trademarks collectively as the "Prima trademark."

1  trademark and Gerawan's intellectual property.  Worrel prosecuted for Gerawan three plum tree patents

2  which were issued on December 8 and 22, 1992 and identified as Prima Red Plum 9-1, U.S. Patent Plant

3  No. 8,057, Prima Black Plum 5-25, U.S. Patent Plant No. 8,067, and Prima Black Plum 8-15, U.S. Patent

4  Plant No. 8,068 (collectively the "plum patents").  Worrel also prosecuted for Gerawan a peach tree

5  patent which was issued on October 28, 1997 and identified as Prima Gattie Peach Tree, U.S. Patent

6  Plant No. 10,085 (the "peach patent").

7                              **Townsend's Representation Of Gerawan**

8         In 1996, Gerawan retained Townsend to assist in a trademark infringement action and thereafter,

9  as Townsend notes, worked on specific projects assigned by Gerawan. In 1999, Townsend prosecuted

10 for Gerawan a nectarine tree patent which was issued on July 24, 2001 and identified as Nectarine Tree

11 Named Prima Diamond 19, U.S. Patent Plant No. 12,011 (the "nectarine patent").[3]

12        Gerawan characterizes Townsend's retention to oversee Gerawan's intellectual property

13 portfolio, including "obtaining, preserving and enforcing intellectual property rights, including

14 trademarks and patents."  Gerawan principal and owner Dan Gerawan states in his declaration that

15 Townsend became "Gerawan's outside counsel regarding substantially all matters pertaining to

16 Gerawan's trademarks and patents, including acquisition, preservation and enforcement.  During the

17 period from at least January of 1998 to January 20, 2009, all applications for new trademarks and patents

18 for an on behalf of Gerawan were prepared by and prosecuted" by Townsend.

19                          **Discovery Of Prima Plant Patents' Problem**

20        Gerawan Chief Financial Officer John Sweet's ("Mr. Sweet's") October 20, 2003 letter to

21 Townsend attorney William Hynes ("Mr. Hynes") asked for advice to obtain protection for the peach

22 patent in Chile, South Africa and Mexico.  Mr. Hynes responded with an October 21, 2003 email with

23 a draft letter ("October 21 draft letter") "which lays out the main problems we have uncovered."

24 Townsend characterizes the October 21 draft letter as a "preliminary assessment" of the defect in Prima's

25 trademark protection in that it explains:

26        . . . We have reason to suspect that insofar as the mark "Prima" is applied to peaches, the
           mark is as a matter of trademark law invalid in its application to peaches.

27

28        [3]        This Court will refer to the plum, peach and nectarine patents collectively as the "Prima plant patents."

Our reading of McCarthy On Trademarks at section 12:36 notes the following:

> The Trademark Manual instructs examining attorneys to refuse registration if the words sought for registration as a mark for live plants or agricultural seats [sic] comprise a varietal or cultivar name.

As an example TMEP (TradeMark Manual of Examining Procedure) section 1202.12 is quoted:

> Whenever an application is filed to register a mark containing wording for live plants or agricultural seeds, the examining attorney must inquire of the applicant whether the term has ever been used as a varietal name and whether such name has been used in connection with a Plant Patent, or a certificate for plant varietal protection.

"Prima" without question appears in the patent name.  Should you bring suit on this trademark, for peaches, the mark will be invalid.

. . .

We note that in the registration of the mark "Prima", many other species of fruit and vegetable were mentioned.  We wonder if the "Prima" mistake is recurrent throughout other patents owned by Gerawan Farms.

To avoid this mistake in the future we make two recommendations.

First, new plants should be given an arbitrary name in patents related to them. . . .

Second, we would phase-in the use of a new trademark, certainly as to peaches and any other patented plant where the mark "Prima" was used in the Plant Patent. . . .

I am genuinely sorry to uncover this defect in your trademark protection.

On October 22, 2003, Mr. Sweet and Mike Gerawan, a Gerawan principal and owner, had a telephone conference with Mr. Hynes, to discuss, using Mike Gerawan's deposition testimony, "that the two different attorneys had allowed us to include the brand name in the variety name in the patent" and "that the Prima brand was discussed as being potentially challenged."  Mike Gerawan further testified:

Q. Certainly as of October 27, 2003 there was no doubt in your mind about what the basic problem was, correct?

A. Correct.

Q. And you knew that four of those patents had been prosecuted by Mr. Worrel and the fifth one had been prosecuted by Townsend at that time, true?

A. True.

Q. An you believed at that stage that those were errors, mistakes that had been made

4

1        by each of those sets of lawyers, true?

2        A.    True.

3        Mr. Hynes' October 28, 2003 letter ("October 28 letter") reiterated Prima trademark protection

4   problems:

5        . . . U.S. law prohibits exclusive ownership of trademark rights in a term that is used as
         a varietal name. . . .

6        *McCarth On Trademarks*, the leading treatise on U.S. trademark law, notes that "[t]he
7        Trademark Manual instructs Examining Attorneys to refuse registration if the words
         sought for registration as a mark for live plants or agricultural products comprise a
8        varietal or cultivar name. The Trademark Manual itself instructs Examining Attorneys
         that, "[w]henever an application is filed to register a mark containing wording for live
9        plants or agricultural seeds, the Examining Attorney must inquire of the applicant
         whether the term has ever been used as a varietal name and whether such name has been
10       used in connection with a Plant Patent, or a certificate for plant varietal protection."

11       Unfortunately, "Prima" appears in the patent name of at least four of your five subsisting
         U.S. plant patents. The term is also used in the patents themselves to identify the plant
12       variety. The use of "Prima" as a varietal name in your U.S. plant patents significantly
         undermines your trademark right in PRIMA, in our opinion.
13                . . .

14       If Gerawan were to attempt to enforce its trademark rights in PRIMA against a motivated
         and well-represented infringer, either directly or through the U.S. Customs Bureau in an
15       effort to control infringing imports or police its overseas licensees, Gerawan's use of
         "PRIMA" as a varietal designation could come to light and be grounds to invalidate your
16       trademark rights, at least in connection with peaches and plums. A diligent review of the
         company's intellectual property assets by an experienced counsel with expertise in trade
17       mark issues relating to plant varieties might also identify this as an impediment on your
         rights. Such a review could occur in a license transaction or sale of any part of your
18       business.

19       Because this problem might not be immediately apparent, even to many intellectual
         property law specialists, Gerawan might have a reasonable chance of stopping some
20       unauthorized uses of PRIMA as a trademark, even for peaches and plums. Of course, we
         would argue that your use of PRIMA trademark for some thirty years should be taken
21       into account. All the same, we believe there are potentially serious impediments to your
         ability to enforce trademark rights in PRIMA in the U.S. and overseas.
22
         In light of the above, we recommend the following:
23
             First, new plants should be given an arbitrary name in patents related to
24           them. . . .

25           Second, we would phase-in the use of a new companion trademark,
             certainly as to peaches and plums where the mark PRIMA has been used
26

27

28

                                        5

1        in the plant patents.[4]

2  Attached to the October 28 letter is an October 27, 2003 email of Townsend attorney John Baum ("Mr.

3  Baum") which concludes: "All in all, the client's trademark rights in PRIMA, particularly for the

4  nectarines and plum trees that appear in the U.S. plant patents that we are aware of, may still be

5  susceptible to challenge and could be difficult to enforce."

6        Gerawan Chief Financial Officer Mr. Sweet testified as to his knowledge of problems to enforce

7  the Prima trademark:

8    Q.   And tell me, if you would, to the best of your recollection in your own words
          what you understood to be the problems . . .

9

10   A.   That by using Prima in the name of the tree fruit patent that if we brought suit to
          enforce the Prima trademark that there was a possibility that we would not
          succeed.

11        . . .

12   Q.   At the time these problems were first identified to you you clearly understood in
          your own mind what fruit patents these problems applied to; true?

13

14   A.   True.

     Q.   That would have been the four fruit patents that were prosecuted by the Worrel

15        firm and the one that was prosecuted by Townsend, correct?

16   A.   Yes.

17  Mike Gerawan testified to similar effect:

18   Q.   And the errors that you understood that had been committed by these lawyers that
          we're discussing here that you learned of in late 2003 concerned the fact that at

19        least to your understanding that the term Prima had been included in these
          various plant patents, correct?

20   A.   Correct.

21   Q.   And you were fully aware in 2003 as to which plant patents were at issue, correct?

22   A.   Correct.

23

24        Gerawan principal and owner Dan Gerawan also testified that in late 2003 "there was the

25  potential of problem because Prima was used in the patent names, that we could be sued for it at some

26  point."

27  _____

28       [4]     Gerawan notes that by October 28, 2003, Townsend had opined to Gerawan that including the Prima
     trademark in the Prima plant patents could not be fixed by trying to remove the Prima name from the Prima plant patents.

6

1    Pointing to its billing invoice, Townsend notes that no later than October 28, 2003, Gerawan had

2    incurred Townsend's fees to address "potential licensing issues arising from the use of 'Prima' in its

3    plant patents."

4    Mr. Hynes' April 27, 2004 email to Mr. Sweet reprinted the October 28 letter's portion regarding

5    Prima trademark protection "so that Michael Gerawan can have a printed copy to consider in

6    determining future activities of the company related to trademarks."   Mr. Sweet's April 2004

7    handwritten notes reflect: "Mark has defects & should be looking at a new mark to be phased in."

8                    **Gerawan's Response To Townsend's Recommendations**

9    Gerawan implemented Townsend's recommendation to stop use of the Prima trademark in future

10    patents.  Gerawan did not act on Townsend's other recommendation to phase in a new trademark where

11    Prima was used in the plant patent.  Dan Gerawan testified that abandoning Prima and developing a new

12    brand was not "a viable option" and that "it didn't seem urgent to abandon a very valuable and decades-

13    long brand under those circumstances."  Mr. Sweet characterized phasing in a new trademark as "not

14    practical."

15    Townsend attorneys Mr. Baum and Matthew Hinsch ("Mr. Hinsch") conducted an April 13, 2005

16    telephone conference with Gerawan employee Carl Pimentel ("Mr. Pimentel") about foreign licensing,

17    in particular in Chile, during which they discussed Prima trademark problems.  Mr. Pimentel testified

18    as to his impressions of the teleconference:

19    . . .I had a very . . . very unsettled feeling after that conversation because a couple things.
      Mr. Baum . . . seemed to be very focused on just trademark of the patents like the patent
20    trademarks and not so much talking about intellectual properties as a whole.  They
      seemed more to evolve back to discussing the actual plant patents.
21
22    And then more disturbing for me was their basically recommendation for
      developing another, another brand, which at the time was like preposterous to me.  It just
      struck me as, I just did not have a very good feeling after that conversation.
23

24    Mr. Pimentel relayed his concerns to Mike and Dan Gerawan and Mr. Sweet in an April 14, 2005 email:

25    The purpose of the meeting was to discuss ways to introduce our proprietary varieties,
      tie-down, and transport device into Chile with the proper patent protection. . . .
26    . . .Any question came back to the trademark issue.  In fact, John actually recommended
      that we develop a new trademark.  At this time I don't have a good feeling about utilizing
27    these individuals."

28    After having received from Mr. Baum the October 28 letter as an email attachment, Mr. Pimentel

7

1   sent Mr. Baum an April 16, 2005 email instructing: "Please do not pursue anything further on this

2   project until we contact you again."[5]  Mike Gerawan testified that Mr. Pimentel would have sought Mike

3   Gerawan's approval or that Mike Gerawan would have instructed Mr. Pimentel to inform Mr. Baum not

4   to pursue further foreign licensing.  Dan Gerawan states in his declaration that the Chilean project

5   addressed potential "licensing of plant patents to foreign growers with regard to importation of produce

6   to the United States" and "was put on hold because of market conditions then existing in 2005."

7          Townsend notes that Gerawan did not request, and Townsend took no action, to phase in a new

8   trademark in relation to the Prima plant patents.  Mr. Sweet testified that "we would continue using the

9   Prima trademark and would defend its use when and if the need arose."  Mike Gerawan testified that he

10  never requested Townsend to develop a new brand.

11         Townsend points out that Gerawan paid for Townsend's services in October 2003, April 2004

12  and April 2005 regarding problems with the Prima trademark in the Prima plant patents, including

13  Townsend's recommendations to avoid future harm and to remediate past problems.  Gerawan notes that

14  during that time there were no problems with the Prima trademark which had not been challenged.

15              **Gerawan's Investigation Into Potential Malpractice**

16         In 2004, Gerawan decided to contact then outside counsel Michael Mallery ("Mr. Mallery")

17  about, using Mr. Sweet's words, the "extent of the cloud on the Prima trademark name."  In April or

18  May 2005, Gerawan sought Mr. Mallery's advice on Townsend's opinions as to a possible latent defect

19  in the Prima trademark.

20         Mr. Sweet testified:

21     Q.   Was one of the topics that you and Mike Gerawan later when you were revisiting
            this and thinking about what areas you might want to seek legal advice on was
22          it associated with whether any or the lawyers bore responsibility in whole or in
            part for the problems caused by the inclusion of Prima in the plant patents?
23          . . .

24     A.   I'm sure we would have held the attorneys to be completely liable for including
            Prima in the names.

25     Q.   And that's what you and Mike Gerawan believed even before you went to Mr.
26          Mallery; true?

27  ————————————

28       [5]   Gerawan identifies the "project" as a "Chilean project involving the licensing of plant patents to foreign
     growers."

A.    Yes.

Q.    And those attorneys included both Worrel and Townsend in terms of who you and Mike Gerawan believed were responsible and liable for these problems; true?

A.    Yes.

## Townsend's Further Representation Of Gerawan

On November 28, 2007, Townsend filed with the USPTO Gerawan's application to register the stylized Prima trademark for use on fresh fruit.  USPTO allowed the registration for the stylized Prima trademark on July 22, 2008 and issued the registration on March 17, 2009.  Mr. Baum's August 5, 2008 letter informed Dan Gerawan of USPTO's allowance of the stylized Prima trademark's registration and advised that Gerawan had six months to file a statement of use.  The letter concluded that Mr. Baum looked forward to hearing from Dan Gerawan.

Gerawan notes that after filing the stylized Prima trademark application, Townsend remained as counsel of record as to registration of the stylized Prima trademark and received all related USPTO communications until attorney Mark Miller substituted into the proceeding on January 20, 2009. Gerawan further notes that Townsend informed Gerawan of dates to file statements of continued use and renewal of the standard character Prima trademark and prepared and submitted documents for renewal.

Townsend prosecuted for Gerawan a GG-80D grape plant patent, which was issued on September 30, 2008 and was the last patent Townsend prosecuted for Gerawan.

Mr. Baum sent Mr. Mallery a January 15, 2009 email to attach the October 28 letter and to state:

> Attached is a copy of our letter concerning a long-standing latent defect in Gerawan's rights to PRIMA.  As I mentioned, it could come to light in a serious fight with a well-represented defendant.  It could also continue to remain latent.  The letter and its attachment include preliminary suggestions about addressing the potential problem.

## Trademark Litigation

On January 29, 2010, Gerawan filed in this Court a trademark infringement action against Prima Bella Produce, Inc. ("PBP") ("trademark action") to claim that PBP's Prima Bella trademarks infringed upon and diluted Gerawan's Prima trademark.  PBP pursued affirmative defenses based on use of the Prima trademark in the Prima plant patents.  PBP's counterclaim alleged that "by virtue of Gerawan's use of the 'PRIMA' name as a portion of the patent plant varietal name, the PRIMA name has become

9

a functional and/or generic designation for Gerawan's fruit varieties and the PRIMA name therefore cannot be used as a trademark designation." PBP sought to cancel Gerawan's Prima trademark registrations. Dan Gerawan states in his declaration that Gerawan expended "substantial amounts in attorneys' fees" to challenge PBP's affirmative defenses and to defend PBP's counterclaim and "was not compelled to expend any attorneys' fees to act to protect its interests" in the Prima trademark prior to the trademark action.

**Tolling Agreement And Gerawan's Claims**

Gerawan entered into tolling agreements with Worrel and Townsend to toll the limitations period during December 9, 2009 to September 30, 2010. Prior to removal to this Court, Gerawan filed its original complaint in Fresno County Superior Court on September 30, 2010. Gerawan proceeds on its First Amended Complaint for Legal Malpractice ("FAC") to allege that defendants' inclusion of the Prima trademark in the Prima plant patents created risks that Gerawan competitors "could exploit and dilute the Prima name by utilizing the cultivar names, including the term 'Prima,' without trademark protection" to damage or invalidate the Prima trademark, "leaving Gerawan no trademark rights at all in a brand that it has developed and garnered tremendous goodwill in for 40 years." The FAC accuses Townsend of:

1.     Concealing prosecution of the nectarine patent "employing the Prima trademark";

2.     Failing to advise Gerawan to sue Worrel;

3.     Failing to advise Gerawan to consult independent counsel regarding Gerawan's rights and remedies as to Townsend's inclusion of Prima in the nectarine patent; and

4.     Failing to provide legal advice to strengthen and preserve the Prima trademark.

The FAC alleges as damages legal expenses to defend PBP's claims that the Prima trademark is generic and should be cancelled given the Prima trademark's inclusion in the Prima plant patents. The FAC claims such legal expenses would have been avoided had the Prima plant patents been prosecuted without negligence. The FAC alleges that prior to January 2010, Gerawan had sustained no actual injury from defendants' negligence in that "no infringer asserted or claimed to Gerawan that the Prima mark was generic" and that Gerawan did not sustain actual injury until it incurred legal expense in the trademark action. Gerawan's F.R.Civ.P. 26(a)(1) initial disclosures further identify as damages loss or

1  diminution in the Prima trademark "caused by a legal finding that the trademark is generic."

2  **DISCUSSION**

3  **Summary Judgment Standards**

4  Defendants contend that section 340.6 bars Gerawan's legal malpractice claims in that Gerawan

5  discovered alleged malpractice and suffered actual injury therefrom more than a year prior to the tolling

6  agreements.  Gerawan contends that it did not suffer actual injury from defendants' malpractice until the

7  Prima trademark was challenged in the trademark action to toll the section 340.6 limitations period.

8  F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense

9  – or the part of each claim or defense – on which summary judgment is sought."  "A district court may

10  dispose of a particular claim or defense by summary judgment when one of the parties is entitled to

11  judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st

12  Cir. 1999).

13  Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any

14  material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita*

15  *Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv.,*

16  *Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary

17  judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need

18  for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers*

19  *v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

20  On summary judgment, a court must decide whether there is a "genuine issue as to any material

21  fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(a), (c); *Covey*

22  *v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*,

23  398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82

24  S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir.

25  1984).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

26  inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for

27  summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

28  S.Ct. 2505 (1986)

1  The evidence of the party opposing summary judgment is to be believed and all reasonable

2  inferences from the facts must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255, 106

3  S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.  The inquiry is "whether the evidence presents

4  a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

5  prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

6  "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the

7  court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co. v. Fritz Companies,*

8  *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*,

9  895 F.2d 563, 574 (9th Cir. 1990).  A party seeking summary judgment on an affirmative defense " bears

10  the initial burden of establishing the absence of a genuine issue of fact on each issue material to his

11  affirmative defense." *Houghton v. South*, 965 F.2d 1532, 1537 (9th Cir. 1992).  "As to materiality, the

12  substantive law will identify which facts are material.  Only disputes over facts that might affect the

13  outcome of the suit under the governing law will properly preclude the entry of summary judgment."

14  *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

15  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

16  fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

17  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry

18  of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

19  make the showing sufficient to establish the existence of an element essential to that party's case, and

20  on which that party will bear the burden of proof at trial.")  "But if the nonmoving party produces

21  enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion."

22  *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.  "The amount of evidence

23  necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the

24  parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting

25  *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)).  "The mere

26  existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*,

27  477 U.S. at 252, 106 S.Ct. 2505.

28  As discussed below, Gerawan has raised factual issues to defeat summary judgment for

12

1   defendants on the limitations defense.

2   **Section 340.6 Limitations Period**

3   The parties agree that section 340.6's one-year limitations period applies. *Guaranty Trust Co.*

4   *of N.Y. v. York*, 326 U.S. 99, 110, 65 S.Ct. 1464 (1945).  Section 340.6(a) provides in pertinent part:

5     (a) An action against an attorney for a wrongful act or omission, other than for
actual fraud, arising in the performance of professional services shall be commenced
6   within **one year after the plaintiff discovers**, or through the use of reasonable diligence
should have discovered, the **facts constituting the wrongful act or omission**, or four
7   years from the date of the wrongful act or omission, whichever occurs first. . . . [I]n no
event shall the time for commencement of legal action exceed four years except that the
8   **period shall be tolled during** the time that any of the following exist:

9   (1) The plaintiff **has not sustained actual injury**.

10  (2) The attorney **continues to represent the plaintiff regarding the specific subject
matter** in which the alleged wrongful act or omission occurred. . . . (Bold added.)

11

12  Defendants seek summary judgment based on section 340.6(a)'s one-year limitations period.  As

13  such, the key issues are when Gerawan discovered facts constituting defendants' alleged wrongs or

14  omissions and whether Gerawan is entitled to tolling based on delayed sustaining of actual injury and

15  Townsend's continuous representation of Gerawan regarding the specific subject matter to give rise to

16  Gerawan's claims.

17  **Discovery Of Facts Constituting Malpractice**

18  Worrel identifies its alleged malpractice as inclusion of the Prima trade mark in the plum patents

19  in 1992 and in the peach patent in 1997.  Townsend identifies its alleged malpractice as inclusion of the

20  Prima trademark in the nectarine patent in 2001.  Defendants contend that no later than October 2003

21  based on Townsend's communications, Gerawan was aware of problems arising from inclusion of the

22  Prima trademark in the Prima plant patents to have discovered the facts constituting defendants'

23  malpractice.

24  "Absent tolling, a legal malpractice action accrues, and the one-year limitations period

25  commences running, when the plaintiff discovers or through the use of reasonable diligence should have

26  discovered the facts constituting the wrongful act." *Truong v. Glasser*, 181 Cal.App.4th 102, 110, 103

27  Cal.Rptr.3d 811 (2009).  The key is the client's discovery of facts constituting the wrongful act or

28  omission, "not by his discovery that such facts constitute professional negligence, i.e., by discovery that

13

a particular legal theory is applicable based on the known facts." *Truong*, 181 Cal.App.4th at 110, 103 Cal.Rptr.3d 811. "It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action. Thus, if one has suffered appreciable harm and knows or suspects that professional blundering is its cause, the fact that an attorney has not yet advised him does not postpone commencement of the limitations period." *Gutierrez v. Mofid,* 39 Cal.3d 892, 898,218 Cal.Rptr. 313 (1985).

As to Gerawan's discovery of facts constituting malpractice, defendants rely on Townsend's October 2003 communications. Mr. Hynes' October 21 draft letter advised: "We have reason to suspect that insofar as the mark 'Prima' is applied to peaches, the mark is as a matter of trademark law invalid in its application to peaches. . . . 'Prima' without question appears in the patent name. Should you bring suit on this trademark, for peaches, the mark will be invalid." Mr. Hynes October 28 letter reiterated:

> Unfortunately, "Prima" appears in the patent name of at least four of your five subsisting U.S. plant patents. The term is also used in the patents themselves to identify the plant variety. The use of "Prima" as a varietal name in your U.S. plant patents significantly undermines your trademark right in PRIMA, in our opinion.
>
> . . .
>
> If Gerawan were to attempt to enforce its trademark rights in PRIMA against a motivated and well-represented infringer, either directly or through the U.S. Customs Bureau in an effort to control infringing imports or police its overseas licensees, Gerawan's use of "PRIMA" as a varietal designation could come to light and be grounds to invalidate your trademark rights, at least in connection with peaches and plums.
>
> . . . All the same, we believe there are potentially serious impediments to your ability to enforce trademark rights in PRIMA in the U.S. and overseas.

Defendants further point to Mike Gerawan's testimony:

> Q.   Certainly as of October 27, 2003 there was no doubt in your mind about what the basic problem was, correct?
>
> A.   Correct.
>
> Q.   And you knew that four of those patents had been prosecuted by Mr. Worrel and the fifth one had been prosecuted by Townsend at that time, true?
>
> A.   True.
>
> Q.   And you believed at that stage that those were errors, mistakes that had been made by each of those sets of lawyers, true?

1    A.    True.

2    In addition, in 2004, Gerawan contacted then outside counsel Mr. Mallery about the cloud on the

3    Prima trademark.  In April or May 2005, Gerawan sought Mr. Mallery's advice on Townsend's opinions

4    as to a possible latent defect in the Prima trademark.

5    Townsend argues that no later than April 2005, Gerawan was aware of "all facts" constituting

6    Worrel's and Townsend' malpractice in that "Gerawan knew of the problem, its impact, and who it

7    believed had caused it."

8    The record reveals that Gerawan knew of facts constituting defendants' alleged negligence as of

9    October 2003. Gerawan does not challenge defendants' points regarding its knowledge of facts

10   constituting defendants' negligence.  There is no factual dispute that Gerawan had discovered facts

11   constituting alleged malpractice in October 2003.  The discovery issue resolves in defendants' favor.

12   Thus, this Court turns to whether Gerawan is entitled to tolling of section 340.6's one-year limitations

13   period.

14                           **Sustaining Actual Injury**

15   Defendants contend that actual injury tolling is not at issue in that Gerawan sustained actual

16   injury as of successful prosecution of the Prima plant patents with their inclusion of the Prima trademark,

17   and in particular, 1992 for the plum patents, 1997 for the peach patent, and 2001 for the nectarine patent.

18   Gerawan argues that it did not suffer actual injury until it was compelled to defend the Prima trademark

19   in the trademark action.

20   Section 340.6(a)(1) tolls the one-year limitations period until the plaintiff client has "sustained

21   actual injury."  When attorney error causes actual injury "cannot depend on facile, 'bright line' rules."

22   *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 18 Cal.4th 739, 764, 76 Cal.Rptr.2d 749

23   (1998).  "Instead, the particular facts of each case must be examined in light of the wrongful act or

24   omission the plaintiff alleges against the attorney. When the alleged error causes injury or harm

25   recoverable in a legal malpractice action, the plaintiff has 'sustained actual injury' that ends tolling under

26   section 340.6, subdivision (a)(1)."  *Jordache Enterprises*, 18 Cal.4th at 764, 76 Cal.Rptr.2d 749.

27   In *Jordache Enterprises*, 18 Cal.4th at 750, 76 Cal.Rptr.2d 749, the California Supreme Court

28   equated appreciable harm to actual injury:

                                          15

> If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. . . . The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm – not yet realized – does not suffice to create a cause of action for negligence. . . . Hence, until the client suffers appreciable harm as a consequence of [the] attorney's negligence, the client cannot establish a cause of action for malpractice. . . . The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by [the] attorney's negligence. . . . Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue. (Citations and internal quotations omitted.)

"The test for actual injury under section 340.6, therefore, is whether the plaintiff has sustained any damages compensable in an action, other than one for actual fraud, against an attorney for a wrongful act or omission arising in the performance of professional services." *Jordache Enterprises*, 18 Cal.4th at 750, 76 Cal.Rptr.2d 749.  Occurrence of actual injury "is predominantly a factual inquiry," however, "[w]hen the material facts are undisputed, the trial court can resolve the matter as a question of law in conformity with summary judgment principles." *Jordache Enterprises*, 18 Cal.4th at 750, 76 Cal.Rptr.2d 751.  "The determination of actual injury requires only a factual analysis of the claimed error and its consequences. The inquiry necessarily is more qualitative than quantitative because the fact of damage, rather than the amount, is the critical factor." *Jordache Enterprises*, 18 Cal.4th at 752, 76 Cal.Rptr.2d 751.

"If the last element to occur is the element of damage, the statute of limitations begins to run upon the occurrence of appreciable and actual harm, however uncertain in amount, that consists of more than nominal damages." *Van Dyke v. Dunker & Aced*, 46 Cal.App.4th 446, 452, 53 Cal.Rptr.2d 862 (1996) (citation and internal quotations omitted).  "It is the fact of damage, rather than the amount, that is the relevant consideration." *Van Dyke*, 46 Cal.App.4th at 452, 53 Cal.Rptr.2d 862.  "Consequently, the client may suffer 'appreciable and actual harm' before he or she sustains all, or even the greater part, of the damages occasioned by the professional negligence." *Van Dyke*, 46 Cal.App.4th at 452, 53 Cal.Rptr.2d 862.  "Harm is actual and appreciable when it becomes 'irremediable.' Irremediable means something which is lost or something which is impossible to remedy." *Turley v. Wooldridge*, 230 Cal.App.3d 586, 590, 281 Cal.Rptr. 441 (1991) (client suffered actual injury from allegedly unequal community property division when she executed marriage termination agreement).

"The loss or diminution of a right or remedy constitutes injury or damage. . . . Neither uncertainty

of amount nor difficulty of proof renders that injury speculative or inchoate." *Jordache Enterprises*, 18 Cal.4th at 744, 76 Cal.Rptr.2d 751. "[W]hen malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred." *Foxborough v. Van Atta*, 26 Cal.App.4th 217, 227, 31 Cal.Rptr.2d 525 (1994).

### Property Right And Presumption Against Genericness

Defendants argue that Gerawan suffered actual injury at successful prosecution of the Prima plant patents because at that time, Gerawan's property right in the Prima trademark was compromised. Townsend notes that when the Prima trademark became susceptible to challenge as generic, actual injury "would necessarily have occurred the moment the trademark was diluted by its inclusion in the varietal name of a patent." Worrel echoes Townsend and argues that "damage commenced when [Gerawan's] Prima mark became more vulnerable to a genericness challenge because of the use of Prima in its varietal patents."

"A trademark is a very peculiar kind of property," and "a very delicate property right it is." 1 McCarthy on Trademarks and Unfair Competition (2012) *Trademark Protection in General,* § 2:15, p. 2-39, 2-40.1. A "trademark is merely a symbol of good will," which "is a business value that reflects the basic human propensity to continue doing business with a seller who has offered goods and services that the customer likes and has found adequate to fulfill his needs." 1 McCarthy on Trademarks and Unfair Competition (2012) *Trademark Protection in General,* § 2:17, p. 2-40.4. "There is no doubt that good will, together with its symbol – the trademark – are legally classified as 'property.'" 1 McCarthy on Trademarks and Unfair Competition (2012) *Trademark Protection in General,* § 2:20, p. 2-41. "Even though trademarks and good will are forms of non-physical property, they can be carried on the books as an asset of the company." 1 McCarthy on Trademarks and Unfair Competition (2012) *Trademark Protection in General,* § 2:21, p. 2-44.

Defendants focus on when the right at issue here – the Prima trademark – was damaged, compromised or harmed, that is, when its value diminished. Worrel argues that the injury was "immediate" upon successful prosecution of the Prima plant patents in that the Gerawan's valuable Prima trademark "was diminished and subjected Gerawan to actual injury in the form of actual legal

fees." Worrel points to "attorney's fees incurred as a result of the alleged malpractice, in 2003 through May, 2005 when it incurred attorney's fees through Townsend and others to address and offers solutions to this problem." Worrel notes that actual injury from its alleged malpractice became irremediable when "Gerawan elected not to pursue licensing rights in Chile because of issues with its trademark" and decided not to phase in a trademark to offset the effects of the Prima plant patents.

Townsend contends that "a damaged trademark is to some degree less valuable than an undamaged trademark." Townsend assigns actual injury to "the moment [Gerawan's] trademark was rendered susceptible to challenge as generic by its inclusion in the varietal name of a patent."

"[A]ctual injury may consist of impairment or diminution, as well as the total loss or extinction, of a right or remedy." *Jordache Enterprises*, 18 Cal.4th at 750, 76 Cal.Rptr.2d 749. The "loss or diminution of a right or remedy constitutes injury or damage." *Jordache Enterprises*, 18 Cal.4th at 744, 76 Cal.Rptr.2d 749.

Gerawan responds that no legal authority supports defendants' theory that Gerawan suffered actual injury when the Prima trademark was included in the Prima plant patents because of the presumption that a trademark is not generic. Gerawan argues that such presumption creates factual issues as to whether and when Gerawan suffered actual injury.

"A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark . . . ." 15 U.S.C. § 1057(b). "Federal registration of a mark constitutes prima facie evidence of the validity of the mark. . . . For this reason, a plaintiff alleging infringement of a federally-registered mark is entitled to a presumption that the mark is not generic." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005). "Federal registration of a trademark endows it with a strong presumption of validity. The general presumption of validity resulting from federal registration includes the specific presumption that the trademark is not generic." *Coca–Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254(9th Cir.1982) (citations omitted).

The "presumption in favor of a registered trademark . . . can be overcome by a showing by a preponderance of the evidence that the term was or has become generic." *Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 684 F.2d 1316, 1319 (9th 1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234 (1983). "Whether a mark is generic is a question of fact." *Stuhlbarg Intern. Sales Co., Inc. v. John*

18

1    *D. Brush and Co., Inc.*, 240 F.3d 832, 840 (9th Cir. 2001).

2         There is no doubt that the Prima trademark is a valuable property right.  The key issue is when

3    was its validity challenged.  Defendants offer no factual support that actual injury to the Prima trademark

4    was immediate upon successful prosecution of the Prima plant patents.  Defendants point to no challenge

5    to validity of the Prima trademark or a claim of genericness at that time.  The Prima trademark was not

6    challenged until the trademark action.  Until that time, no issue existed as to genericness.  In fact,

7    Townsend sought USPTO registration of the stylized Prima trademark in 2007, more than eight years

8    after the last of the Prima plant patents was prosecuted successfully.  Gerawan did not suffer actual

9    injury upon successful prosecution of the Prima plant patents.  Moreover, there is no less than a factual

10   dispute as to actual injury arising from Gerawan's ceasing pursuit of Chilean licensing in 2005 in that

11   Dan Gerawan declares the licensing "was put on hold because of market conditions then existing in

12   2005."

13                                    ***Incurring Attorney Fees***

14        Defendants further identify the onset of actual injury as no later than May 2005 when Gerawan

15   paid for outside counsel Mr. Mallery's opinions as to Prima trademark defects.  "[A]ttorney fees incurred

16   as a direct result of another's tort are recoverable damages."  *Jordache Enterprises*, 18 Cal.4th at 751,

17   76 Cal.Rptr.2d 749.  "[F]ees paid to a second attorney to correct errors committed by the first attorney

18   represent damages."  *Herrington v. Superior Court*, 107 Cal.App.4th 1052, 1060, 132 Cal.Rptr.2d 658

19   (2003).  "A client suffers damage when he is compelled, as a result of the attorney's error, to incur or pay

20   attorney fees."  *Sirott v. Latts*, 6 Cal.App.4th 923, 928, 8 Cal.Rptr.2d 206 (1992).

21        Worrel argues that Gerawan suffered actual injury starting in 2003 when it paid Townsend

22   attorney fees to address inclusion of the Prima trademark in the Prima plant patents.  Townsend contends

23   that the limitations period was not tolled until Gerawan incurred legal expenses in the trademark action

24   because those legal expenses, similar to those paid to Mr. Mallery, were paid due to the mistake of

25   including the Prima trademark in the Prima plant patents.  Townsend points to the absence of a "legal

26   or logical basis" to distinguish legal expenses paid to Mr. Mallery and those incurred in the trademark

27   action.  Townsend holds Gerawan to have filed suit "at least by April, 2006, one year after it consulted

28   with independent counsel" in that "fees incurred in remediation of the error constitute actual injury."

1    Gerawan responds that attorney fees paid to a second attorney are not actual injury unless

2    compelled to "remedy or mitigate the consequences of the [negligent] attorney's error." Gerawan points

3    to *Jordache Enterprises*, 18 Cal.4th at 754, 76 Cal.Rptr. 2d 749, where the California Supreme Court

4    explained:

5    [S]peculative and contingent injuries are those that do not yet exist, as when an attorney's
     error creates only a potential for harm in the future. . . . An existing injury is not
6    contingent or speculative simply because future events may affect its permanency or the
     amount of monetary damages eventually incurred. . . . Thus, we must distinguish between
7    an actual, existing injury that might be remedied or reduced in the future, and a
     speculative or contingent injury that might or might not arise in the future. (Citations
8    omitted).

9    Gerawan argues that *Jordache Enterprises* demonstrates that potential attorney fees to address threatened

10   litigation do not constitute actual injury.

11    "A client suffers damage when he is compelled, as a result of the attorney's error, to incur or pay

12   attorney fees." *Sirott*, 6 Cal.App.4th at 928, 8 Cal.Rptr.2d 206.

13    This Court agrees with Gerawan that there is no less than a factual question whether it suffered

14   actual injury prior to a legal challenge to the Prima trademark's validity.  Gerawan did not suffer actual

15   injury upon payment of fees for Townsend's evaluation of the Prima plant patents in that the Prima

16   trademark had not been challenged.  The Prima trademark's mere non-threatened exposure to challenge

17   did not constitute actual injury because prior to challenge, there was no diminution to the Prima

18   trademark's value.  Gerawan is correct that construing pre-trademark action fees as actual injury "would

19   effectively eliminate the tolling provision."

20    Until the trademark action, the Prima trademark remained untarnished.  As such, Gerawan's

21   recoverable damages are limited only to expenses directly tied to defending the Prima trademark, and

22   to date, such damages are limited to legal expenses incurred in the trademark action.  *See Sindell v.*

23   *Gibson, Dunn & Crutcher*, 54 Cal.App.4th 1457, 1470, 63 Cal.Rptr.2d 594 (1997) ("the litigation itself

24   is the event which constitutes damage").  Legal expenses incurred up to a legal challenge to the Prima

25   trademark are not recoverable in that they are not an actual injury arising from inclusion of the Prima

26   trademark in the Prima plant patents.  Gerawan appears to concede as much given its challenge to

27   defendants' points that actual injury arose from "expenditure of any attorneys' fees to other attorneys

28   to investigate the work performed by prior counsel."  In sum, defendants are not entitled to summary

20

judgment relief in that at a minimum, questions of fact exist as to actual injury and in turn tolling of section 340.6's one-year limitations period.  That said, Gerawan's recoverable damages are limited to actual defense of the Prima trademark, and the record indicates that such damages are limited to legal expenses in connection with the trademark action.

### Townsend's Continued Representation

Townsend argues that its continuing representation of Gerawan did not toll the limitations period in that Townsend ceased representing Gerawan in the specific subject matter giving rise to Gerawan's malpractice claim.  Gerawan responds that the continuous representation tolling as to Townsend operated "concurrently" with actual injury tolling.

Section 340.6(a)(2) tolls the limitations period when the "attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." The "'continuous representation' rule was adopted in order to 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.'" *Laird v. Blacker*, 2 Cal.4th 606, 618, 7 Cal.Rptr.2d 550 (1992) (citation omitted).  Continued representation tolling "prevents the attorney from defeating a malpractice action by continuing to represent the client until the statute of limitations has run" and "avoids forcing the client to file a lawsuit that would disrupt the ongoing attorney-client relationship, which would prevent the negligent attorney from attempting to correct or minimize the error." *Truong v. Glasser*, 181 Cal.App.4th 102, 116, 103 Cal.Rptr.3d 811 (2009).

An attorney's representation of a plaintiff beyond the specific subject matter giving rise to the malpractice claim does not toll the limitations period:

> The continuous relationship tolling provision applies only so long as representation continues "regarding the specific subject matter in which the alleged wrongful act or omission occurred." (§ 340.6, subd. (a)(2).) Once representation on that matter ends, a client must bring timely suit, notwithstanding that the attorney may continue to represent the client on a range of matters and a direct suit against the attorney may interfere with the attorney-client relationship in all other such matters.

*Beal Bank, SSB v. Arter & Hadden, LLP*, 42 Cal.4th 503, 514, n. 8, 167 P.3d 666 (2007); *see Foxborough*, 26 Cal.App.4th at 228-229, 31 Cal.Rptr.2d 525 (continued representation tolling

1   "addresses a particular phase" of attorney representation).

2         In *Lockton v. O'Rourke*, 184 Cal.App.4th 1051, 1064, 109 Cal.Rptr.3d 392 (2010), the California

3   Court of Appeal distinguished "continuous representation" from an ongoing attorney-client relationship:

4         The mere existence of an attorney-client relationship does not trigger the continuous
          representation rule: Instead, the statute's tolling language addresses a particular phase of
5         such a relationship-representation regarding a specific subject matter. Moreover, the
          limitations period is not tolled when an attorney's subsequent role is only tangentially
6         related to the legal representation the attorney provided to the plaintiff. . . . Therefore,
          [t]he inquiry is not whether an attorney-client relationship still exists but when the
7         representation of the specific matter terminated.  Tolling does not apply where there is
          a continuing relationship between the attorney and client involving only unrelated
8         matters.  (Citations and internal quotations omitted).

9         Townsend argues that its alleged malpractice arises from the "discrete assignment" to prosecute

10  the nectarine patent and which ended in 2001 and that its "later representation of Gerawan was not on

11  the same specific subject matter as that giving rise to this malpractice action."  Townsend notes that

12  although it billed Gerawan "for general intellectual property services within a year of the tolling

13  agreement," it did not represent Gerawan to phase in a new trademark because "Gerawan never asked

14  Townsend to perform any services pertaining to correcting or fixing the defect or problem that then

15  existed" and rejected Townsend's recommendation to phase in a new trademark.  Townsend concludes

16  that by April 2005, "all events inherent" in the alleged negligent nectarine patent "had been completed,

17  even if a general attorney-client relationship otherwise continued" because "Gerawan was not looking

18  to Townsend to work on any remediation" and had pursued other counsel, including Mr. Mallery.

19        Gerawan responds that there are no less than factual issues whether Townsend continued to

20  represent Gerawan as to the subject matter giving rise to malpractice within a year of tolling effective

21  December 9, 2009 by the parties tolling agreements.  Gerawan characterizes Townsend's retention to

22  obtain, preserve and enforce intellectual property rights, including trademarks and patents, and points

23  to Townsend's continuing services, including January 15, 2009 following up on a statement of use for

24  registration of the stylized Prima trademark and repeated mentions of problems with inclusion of the

25  Prima trademark in Prima plant patents.  "'[S]o long as there are unsettled matters tangential to a case,

26  and the attorney assists the client with these matters, he is acting as his representative,' and the statute

27  of limitations is tolled."  *O'Neill v. Tichy*, 19 Cal.App.4th 114, 121, 25 Cal.Rptr.2d 162 (1993) (quoting

28  *Gurkewitz v. Haberman,* 137 Cal.App.3d 328, 333, 187 Cal.Rptr. 14 (1982)).

Gerawan argues that Townsend's advice that injury arising from the Prima plant patents was "latent" equitably estops Townsend to assert the limitations defense. Gerawan points the following from *Shaffer v. Debbas*, 17 Cal.App.4th 33, 43, 21 Cal.Rptr.2d 110 (1993):

> A defendant will be estopped to invoke the statute of limitations where there has been some conduct by the defendant, relied on by the plaintiff, which induces the belated filing of the action. . . . It is not necessary that the defendant acted in bad faith or intended to mislead the plaintiff. . . . It is sufficient that the defendant's conduct in fact induced the plaintiff to refrain from instituting legal proceedings. . . . Whether an estoppel exists – whether the acts, representations or conduct lulled a party into a sense of security preventing him from instituting proceedings before the running of the statute, and whether the party relied thereon to his prejudice – is a question of fact and not of law. (Citations and internal quotations and punctuation omitted.)

Gerawan notes the October 28 letter's equivocation:

> Because this problem **might not be immediately apparent**, even to many intellectual property law specialists, Gerawan **might have a reasonable chance** of stopping some unauthorized uses of PRIMA as a trademark, even for peaches and plums. Of course, we would argue that your use of **PRIMA trademark for some thirty years** should be taken into account. All the same, we believe there are **potentially serious impediments** to your ability to enforce trademark rights in PRIMA in the U.S. and overseas. (Bold added.)

Gerawan notes that Townsend re-sent to Gerawan the October 28 letter in April 2004 and April 2005 and most recently to Mr. Mallery on January 15, 2009. Mr. Baum's email to Mr. Mallery states:

> Attached is a copy of our letter concerning a **long-standing latent defect** in Gerawan's rights to PRIMA. As I mentioned, it **could come to light** in a serious fight with a well-represented defendant. It **could also continue to remain latent**. The letter and its attachment include preliminary suggestions about addressing the **potential problem**. (Bold added.)

Gerawan raises factual issues as to Townsend's continuous representation and corresponding tolling. Townsend attempts to limit its "subject matter" representation to preparation of the nectarine patent. However, the malpractice at issue addresses damage to the Prima trademark, and no less than factual questions exist as to Townsend's continuing representation as to protection of the Prima trademark. In addition, Townsend's equivocal advice as to potential threat to the Prima trademark raises issues whether Townsend lulled Gerawan into a false sense of security. At a minimum, Townsend's advice as to potential, unrealized harm to the Prima trademark contributes to factual issues as to actual injury. Gerawan has raised factual issues as to Townsend's continuous representation and in turn tolling of section 340.6's one-year limitations period.

///

23

## CONCLUSION AND ORDER

For reasons discussed above, this Court DENIES defendants summary judgment relief on the limitations defense. IT IS SO ORDERED.

**Dated:   October 22, 2012**          /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE